IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONNELL MASSIE,                           )
                                          )
            Plaintiff,                    )
                                          )
                                          )   Civil Action No. 21-307-E
      vs.                                 )
                                          )
                                          )
KILOLO KIJAKAZI,                          )
*Acting Commissioner of Social Security*, )
                                          )
            Defendant.                    )

## ORDER

AND NOW, this 30th day of November 2022, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on April 8, 2022,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

9) filed in the above-captioned matter on March 9, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED IN PART and

DENIED IN PART.  Plaintiff's Motion is granted insofar as he seeks remand for further

administrative proceedings and denied in all other respects.  Accordingly, this matter is hereby

remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     Background

Plaintiff protectively filed applications for disability insurance benefits ("DIB") pursuant

to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.*, and supplemental security

income ("SSI") pursuant to Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on November 16,

2015.  (R. 12).  After he received an unfavorable final agency decision, he sought review in the

United States District Court for the Western District of Pennsylvania.  (R. 984).  The Court

determined that the Administrative Law Judge ("ALJ") who had conducted Plaintiff's

administrative hearing on February 15, 2018 had not been "properly appointed under the

Appointments Clause." (R. 1081). Accordingly, the Court remanded Plaintiff's case for "a new

hearing and determination by a properly appointed ALJ other than" the ALJ who conducted

Plaintiff's 2018 hearing. (R. 1083). Plaintiff thereafter appeared telephonically for a hearing

before ALJ Kelli Kleeb on December 16, 2020. (R. 1002—04). On March 9, 2021, ALJ Kleeb

found Plaintiff to be not disabled under the Act. (R. 996). Plaintiff sought review of her

decision before the Appeals Council ("AC"), but the AC "found no reason . . . to assume

jurisdiction" (R. 974); therefore, ALJ Kleeb's decision became "the final decision of the

Commissioner." 20 C.F.R. §§ 404.984(a), 416.1484(a). Plaintiff has challenged that decision

before the Court. In his summary judgment motion, Plaintiff has asked this Court to reverse the

ALJ's decision and find that he is entitled to benefits. (Doc. No. 9, pg. 4). Alternatively,

Plaintiff has sought remand for further administrative proceedings. (*Id.*). He has also sought an

award of attorney's fees and whatever other relief the Court would deem appropriate. (*Id.*).

## II.     Standard of Review

The ALJ's decision will be affirmed if supported by "substantial evidence." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)). Accordingly, the Court

reviews the ALJ's findings of fact for substantial evidence and has "plenary" review "with

respect to all questions of law." *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011).

The evidentiary threshold for the substantial-evidence standard is "not high." *Biestek*, 139 S. Ct.

at 1154. Substantial evidence only means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938)). While this standard is deferential, it is not toothless: an ALJ may not rely

on "[a] single piece of evidence" if he or she "ignores, or fails to resolve, a conflict created by

2

countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).   Further,

evidence is not substantial "if it is overwhelmed by other evidence." *Id.*   That reviewing courts

"may know the basis for the decision and" assess the adequacy of evidentiary support for the

ALJ's decision, the ALJ ought to make his or her findings "as comprehensive and analytical as

feasible." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (quoting *Baerga v. Richardson*,

500 F.2d 309, 312 (3d Cir. 1974)).

To determine disability under the Act, ALJs use a five-step evaluation.  20 C.F.R.

§§ 404.1520(a)(1), 416.920(a)(1); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  Pursuant

thereto, an ALJ considers "whether a claimant (1) is working, (2) has a severe impairment, (3)

has an impairment that meets or equals the requirements of a listed impairment, (4) can return to

his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts*

*v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009); 20 C.F.R.

§§ 404.1520(a)(4)(i)—(v), 416.920(a)(4)(i)—(v).  If the ALJ determines that the claimant can

neither return to past work, nor adjust to other work, then the claimant will be found to be

disabled under the Act.  *Plummer*, 186 F.3d at 428 (citations omitted).

### III.     The ALJ's Decision

In this matter, the ALJ considered Plaintiff's alleged disability from October 26, 2015,

when Plaintiff "suffered a gunshot wound to the head," through the date of decision.  (R. 984,

988, 996).  Plaintiff survived the shooting and returned to his prior work as a valet (hereinafter

"parking attendant") on September 11, 2016, just before the one-year anniversary of the attack.

(R. 987).  Plaintiff's return to work as a parking attendant factored into the ALJ's assessment of

whether Plaintiff had engaged in substantial gainful activity ("SGA") since his alleged onset

date.  Considering Plaintiff's post-shooting work as a parking attendant, the ALJ found that

Plaintiff had "return[ed] to work at D&S Parking Properties on September 11, 2016, with wages

of $3,449.00, above the level of [SGA] in the fourth quarter of 2016." (R. 987). She further

found that Plaintiff had worked as a patient transporter from January 2019 through March 2020

before "he was fired for unusual behaviors related to his religious beliefs." (*Id.*). Altogether, the

ALJ determined that Plaintiff engaged in SGA from October 2016 through December 2016 and

January 2019 through March 2020, so she excluded those periods from her consideration of other

"continuous 12-month period(s) during which the claimant did not engage in [SGA]." (*Id.*).

At step two of her evaluation, the ALJ determined that Plaintiff had six severe, medically

determinable impairments: "[(1)] the residual effects of a gunshot wound to the head, [(2)] the

residual effects of left eye enucleation, [(3)] headaches, [(4)] depressive disorder, [(5)] post-

traumatic stress disorder, and [(6)] anxiety disorder." (*Id.*). At step three the ALJ found that

none of Plaintiff's impairments, nor any combination of his impairments, met or equaled the

criteria for one of the presumptively disabling impairments that are listed in the regulations at 20

C.F.R. Part 404, Subpart P, Appendix 1. (R. 988).

Having found that Plaintiff had severe medically determinable impairments but did not

suffer from a presumptively disabling impairment, the ALJ set out to formulate Plaintiff's

residual functional capacity ("RFC") for her consideration at steps four and five of the

evaluation. For the RFC, she considered Plaintiff's alleged symptoms and limitations, objective

medical records, and opinions offered by consultative examiners, an ocularist, and a non-

examining State agency consultant. (R. 990—94). Based on this evidence, the ALJ determined

that Plaintiff could sustain a light-work RFC. (R. 990). She added a number of limitations to the

RFC, such as limitation to "simple, routine tasks, and simple work-related decisions; frequent

interaction with supervisors and co-workers; occasional interaction with the public; and frequent

changes to work processes and settings." (*Id.*).  Having formulated this RFC, the ALJ found that

Plaintiff could not return to past relevant work.  (R. 994—95).  However, the ALJ further found

that Plaintiff's RFC, age, education, and work experience would permit adjustment to

"representative occupations such as inspector of medical products," "marker," and "collator."

(R. 995).  Such occupations corresponded to more than 200,000 jobs nationally; therefore, the

ALJ found Plaintiff to be not disabled.  (R. 995—96).

## IV.    Legal Analysis

Plaintiff has raised three main arguments challenging the ALJ's decision finding him to

be not disabled.  Two of his three arguments—which are closely related—warrant remand.

Specifically, Plaintiff's argument that the ALJ did not adequately explain her consideration of

the testimony offered by Plaintiff's wife is compelling.  That testimony appears to have been

particularly relevant to Plaintiff's argument that his return to work as a parking attendant ought

to have been found to be an unsuccessful work attempt ("UWA").  Plaintiff's wife's testimony

and the issue of whether Plaintiff's return to parking-attendant work was a UWA should be

considered further on remand.  Having determined that remand is necessary, the Court will not

reach Plaintiff's argument disputing the weights the ALJ afforded various opinions in the

record.[1]

Plaintiff has argued that the ALJ's decision lacks adequate discussion of Plaintiff's wife's

testimony.  An ALJ must "hear and evaluate all relevant evidence in order to determine whether

an applicant is entitled to disability benefits." *Cotter*, 642 F.2d at 704.  In his or her evaluation

---

[1]     Though the Court herein takes no position on the matter of whether the ALJ erred in allocating weight among various medical opinions and purported medical opinions, care should be taken upon remand to ensure that medical opinion evidence and other evidence in the record is afforded appropriate weight.  Weight determinations should be explained and supported in such a way that obviates need for further remand.

of the relevant evidence in a claimant's record, an ALJ may, of course, reject evidence; however, "the ALJ cannot reject evidence for no reason or for the wrong reason." *Id.* at 706.  When an ALJ considers statements of non-medical sources—*e.g.*, spouses, parents, friends, or neighbors—they may evaluate such statements by considering "factors" like "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03P, 2006 WL 2329939 (S.S.A.), at *6 (Aug. 9, 2006).[2]  The Act's implementing regulations encourage ALJs to "explain the weight given" to opinions of non-medical sources or "otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning" if the non-medical source's opinion could affect "the outcome of the case." 20 C.F.R. § 404.1527(f)(2).  That is, an ALJ's consideration of a relevant non-medical source's statement(s) should be documented in the decision with enough detail to facilitate a reviewing court's "proper[] exercise" of its reviewing function. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter*, 642 F.2d at 705).

At Plaintiff's most recent administrative hearing, his wife—Shanairra Massie (hereinafter "Ms. Massie")—gave her testimony as the primary witness to Plaintiff's daily life.  (R. 1029—41).  Ms. Massie testified that her and her husband's traumatic ordeal began when the father of her children "kicked [her] door down and shot [her] husband in the head." (R. 1039).  She indicated that after Plaintiff's initial period of recovery, he had "seizures in his sleep," was exceedingly sensitive to light and noise, and required her help to bathe and eat.  (R. 1034).  She testified that Plaintiff had been a parking attendant before the shooting and that he was able to

---

[2]     SSR 06-03P has been rescinded, "effective for claims filed on or after March 27, 2017." Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P, 2017 WL 3928305 (S.S.A.), at *1 (Mar. 27, 2017).

return to that work after a period of recovery, though she lamented that the couple's financial

pressures perhaps cut his recovery too short. (R. 1031—32). Upon his return to work, Plaintiff

called Ms. Massie as many as twenty-five times daily for support. (R. 1032). When he called,

Plaintiff expressed that "his head hurt," he was having difficulty concentrating, and—

sometimes—that he had "crashed a car." (*Id.*). Ms. Massie tried "to encourage him," but it was

difficult for her to support Plaintiff while managing her own work. (*Id.*). Ms. Massie believed

Plaintiff's employer tolerated these phone calls because Plaintiff "had a good relationship with

the supervisor" who knew him before the shooting and may have "felt sorry for him." (R. 1033).

After Plaintiff "crashed about four cars," his employer's tolerance waned, and Plaintiff's role

was changed from what Ms. Massie described as "the car part" to "something else." (*Id.*).

According to Ms. Massie, frequent phone calls were not the only change in Plaintiff's

behavior after the shooting. She indicated that Plaintiff could be "difficult a lot," that he was

"usually angry," and that he "let[] the littlest things get to him." (R. 1035—36). Ms. Massie

further indicated that Plaintiff's spirituality and public expressions thereof increased after his

injury. According to Plaintiff's testimony, he had been fired from his patient transporter job in

March 2020 because a patient lied and reported him for "speaking in tongues and all sorts of

stuff." (R. 1010). But, when Ms. Massie was asked about Plaintiff's termination from that job,

she indicated that she could believe her husband may have spoken in tongues to rid a patient of a

spirit. (R. 1038). She testified that Plaintiff had called her from that job "talking about spirits"

and, when asked if Plaintiff would typically "cast[] out spirits," she responded affirmatively. (R.

1037—38). Ms. Massie explained that this behavior was not typical before the shooting and that

she counseled Plaintiff to stop talking about spirits "out loud." (R. 1040—41). Ms. Massie

further testified that Plaintiff mistakenly believed himself to be "okay" (R. 1039) and

"downplay[ed] a lot of his actions." (R. 1030).

This testimony is clearly relevant to, *inter alia*, evaluating Plaintiff's representation of his

symptoms/limitations, Plaintiff's work history and job performance, and the effects of the

shooting on Plaintiff's behavior. Given the obvious probative value of this testimony, the ALJ's

decision would have benefited from more than a cursory mention of it. Most of the relevant

insights from Ms. Massie's testimony are unmentioned in the ALJ's decision. The ALJ mainly

referenced those parts of Ms. Massie's testimony that aligned with Plaintiff's testimony, even

though Ms. Massie explained how she perceived significant changes in Plaintiff while he

believed himself to be "okay." (R. 1039). The ALJ's discussion of Ms. Massie's testimony is

brief enough to be reprinted here:

> The claimant *and his wife* . . . testified to daily headaches lasting at
> least two hours, as well as eye pain and nosebleeds, and limited
> ability to focus. The claimant *and his wife* further stated that he
> experienced sleep disturbance secondary to nightmares from the
> gunshot injury . . . was forgetful, had unusual spiritual thoughts, and
> became nervous and anxious around people.

 (R. 990—91) (emphasis added). The only other mention of Ms. Massie's testimony appeared in

the ALJ's discussion of Plaintiff's ability to adapt and manage himself, where the ALJ

referenced Ms. Massie's testimony that Plaintiff "sometimes required reminders" for personal

care activities. (R. 989). These references to Ms. Massie's testimony give the Court little insight

into the ALJ's consideration of, *e.g.*, Ms. Massie's testimony that Plaintiff was able to resume his

job as a parking attendant because his employer was sympathetic to Plaintiff's situation.

Accordingly, the Court will order remand for further consideration of this evidence.[3]

---

[3]     For purposes of remand the Court acknowledges that there is no "particular language" or
"format" requirement for an ALJ's analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.

This brings the Court to Plaintiff's argument that the ALJ did not adequately consider evidence tending to prove that Plaintiff's return to his work as a parking attendant in the final months of 2016 was a UWA, not SGA.  As the Court briefly recounted in Section III *supra*, in this matter the ALJ found at the first step of her analysis that Plaintiff had engaged in SGA from October 2016 through December 2016 and from January 2019 through March 2020.  (R. 987).  Plaintiff has not disputed the ALJ's finding that his full-time job as a patient transporter in 2019 and 2020 was SGA, but he has disputed the ALJ's finding that it was SGA when he returned to his parking attendant job in the last quarter of 2016.  This matters, he argues, because a finding of disability through the end of 2016 may have "at least entitled [Plaintiff] to a closed period of disability benefits" from the time of the shooting through a later date.  (Doc. No. 10, pg. 20).

As the Court has explained, the first step of an ALJ's assessment of alleged disability is a finding of whether the claimant is engaged in SGA.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is disqualifying except that what appears to be SGA may be found to be a UWA.  UWA exists as "an equitable means of disregarding relatively brief work attempts that do not demonstrate sustained SGA."  SSR 84-25, 1984 WL 49799 (S.S.A.), at *1 (Jan. 1, 1984); 20 C.F.R. § 404.1574(c).  Accordingly, work that appears to be SGA may constitute a UWA if the work "ended or [was] reduced to the non-SGA level within 3 months due to [the claimant's] impairment or to the removal of special conditions related to the impairment that are essential to the further performance of work."  SSR 84-25, 1984 WL 49799, at *2.  For work that lasted three-to-six months, such work may constitute a UWA if it "ended or [was] reduced to the non-

---

2004).  However, the Court further notes that when ALJs consider opinions from non-medical sources, they are encouraged in their "[a]rticulation" of their consideration of such evidence to ensure that a "subsequent reviewer [can] follow the adjudicator's reasoning."  20 C.F.R. § 404.1527(f)(2).

SGA level within 6 months due to the impairment or to the removal of special conditions . . .

related to the impairment that are essential to the further performance of work." *Id.* at \*2—3.

For work that lasted between three and six months, there must have also been "frequent absences

due to the impairment," "unsatisfactory [work] due to the impairment," "special conditions" for

doing the work, or it must have been the case that the work was "done during a . . . temporary

remission of the impairment." *Id.* "Special Conditions" for work are "unusual" opportunities for

accommodation in a work setting, *e.g.*, permission to work irregular hours, employer tolerance of

"a lower standard of productivity . . . than other employees," or a work opportunity based on a

special relationship like a "past association" with an employer. *Id.*

Having reviewed the ALJ's step-one finding, the Court finds that the ALJ did not

adequately consider evidence that could have been found to prove Plaintiff's return to his job as

a parking attendant was a UWA. The ALJ only briefly alluded to such a possibility when—after

describing Plaintiff's 2016 work as a parking attendant and 2019 to 2020 work as a patient

transporter—she wrote that Plaintiff "did not allege any special work conditions, such as . . .

special relationship with his employer." (R. 987). In this brief acknowledgment of the

possibility of finding a UWA, there is no mention of the circumstances surrounding Plaintiff's

work in 2016, nor of the reason that Plaintiff's income decreased to below SGA-level after those

three months. Plaintiff continued to work for his employer, D&S Parking Properties, in 2017

and 2018, but not for enough income for this work to be SGA. (R. 1203). Evidence in the

record as to *why* Plaintiff's income from this work materially decreased is conflicting: at his

2018 hearing, Plaintiff testified that he had only wanted to work part time (R. 38), but Ms.

Massie testified that the decrease in Plaintiff's income corresponded to a change of his position

at D&S Parking Properties due to poor performance. (R. 1033).

10

Ms. Massie's testimony could have supported a finding that Plaintiff had the opportunity to return to D&S Parking Properties in 2016 because of his past association with his employer, that he continued to hold the job despite poor performance because of that relationship, and that he was eventually demoted because his impairment(s) caused poor performance.  The Court finds it troubling that, despite this evidence, the ALJ explained her step-one SGA finding by summarizing that Plaintiff "did not allege any special work conditions." (R. 987).  Accordingly, and without taking any position as to an appropriate step-one determination based on the evidence, the Court will order remand of this matter for additional consideration.

V.      Conclusion

For the foregoing reasons the Court will order remand of this matter for further administrative proceedings.  The Court will not go so far as to reverse the underlying decision and order an award of benefits.  That relief is appropriate "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 366 n.16 (E.D. Pa. 2018) (quoting *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)).  The Court also considers whether a claimant's "disability determination process has been delayed due to factors beyond [his/her] control." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008).  The record in this case does not lend itself to reversal for an award of benefits, nor has Plaintiff suffered an egregious delay.  Additionally, the Court will not consider Plaintiff's request for fees at this juncture.  (Doc. No. 9, pg. 4).  Plaintiff may seek fees "within thirty days of final judgment in [this] action" pursuant to 28 U.S.C. § 2412(d)(1)(B).  Accordingly, the Court hereby remands this matter for proceedings consistent with the Order.

s/ Alan N. Bloch
United States District Judge

11

ecf:      Counsel of Record